No. 71,406

GARY W. JENKINS, *Appellant/Cross-appellee*, v. AMCHEM PRODUCTS, INC.; UNION CARBIDE AGRICULTURAL PRODUCTS COMPANY; RHONE POULENC AG COMPANY; PLATTE CHEMICAL COMPANY; and FARMLAND INDUSTRIES, INC., *Appellees/Cross-appellants.*

(886 P.2d 869)

Opinion filed December 16, 1994.

*Mark A. Furney*, of Overland Park, argued the cause, and *Brenden W. Webb*, of Overland Park, was with him on the briefs for appellant/cross-appellee.

*Stephen W. Jacobson,* of Kansas City, Missouri, argued the cause, and *Monte Vines* and *Donald W. Bostwick,* of Adams, Jones, Robinson & Malone, of Wichita, were with him on the briefs for appellees/cross-appellants.

*Patti A. Goldman,* of Sierra Club Legal Defense Fund, of Seattle, Washington; *Brian Wolfman,* of Public Citizen Litigation Group, of Washington, D.C.; *Arthur H. Bryant* and *Adele P. Kimmel,* of Trial Lawyers for Public Justice, of Washington, D.C.; and *Gene E. Schroer,* of Schroer, Rice, P.A., of Topeka, were on the *amici curiae* brief for Trial Lawyers for Public Justice and Public Citizen.

The opinion of the court was delivered by

ABBOTT, J.: Plaintiff Gary Jenkins instituted this products liability action against defendants Amchem Products, Inc., Union Carbide Agricultural Products Company, Rhone Poulenc Ag Company, Platte Chemical Company, and Farmland Industries, Inc., alleging that his long-term use of the herbicide chemical commonly known as 2,4-D caused or contributed to his development of non-Hodgkin's lymphoma. The trial court ruled that if plaintiff proved defendants' products cause cancer, plaintiff would have established a prima facie strict liability claim without having to prove a more specific defect. However, the trial court granted summary judgment to defendants and determined that plaintiff's failure to warn and strict liability claims were preempted by the Federal Insecticide, Fungicide & Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* (1988). Plaintiff appeals and defendants cross-appeal.

Gary Jenkins has farmed and ranched for many years. During this time, he was exposed to chlorophenoxy herbicides, which have as an active ingredient the chemical commonly known as 2,4-D, manufactured or produced by the defendants. Chlorophenoxy herbicides are used to kill broad leaf weeds in fields and brush in pastures. In December 1990, plaintiff was diagnosed with non-Hodgkin's lymphoma.

Plaintiff instituted this action in the trial court, alleging that the defendants' products were defective and unreasonably dangerous and that the products either caused or were substantial factors in causing plaintiff's disease. Plaintiff's expert witness stated that the defendants' 2,4-D herbicide products were contaminated with toxic substances, including dioxin. Plaintiff's ex-

pert opined it was more probable than not that plaintiff's long-term exposure to 2,4-D significantly contributed to the causation of his disease, but the expert could not state "that the failure to manufacture 2,4-D, free of toxic contaminants . . . is what caused Gary Jenkins' non-Hodgkin's lymphoma." The pretrial order set forth the following theories of liability: (1) negligence; (2) failure to adequately test the product to make sure it was safe and/or free from harmful contaminants; (3) failure to warn or properly communicate to plaintiff that long-term exposure to the products greatly increased his risk of developing non-Hodgkin's lymphoma; and (4) strict liability, as stated in PIK Civ. 2d 13.21 (1993 Supp.), because chlorophenoxy herbicides were defective and unreasonably dangerous in that the products were dangerous to an extent beyond that which would be contemplated by the ordinary consumer and were defective because they were incapable of being produced free from harmful contaminants.

The defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted, arguing that plaintiff's claims based on inadequate warnings were preempted by FIFRA. FIFRA covers pesticides, insecticides, slimicides, herbicides (2,4-D is a herbicide), and other chemicals. The court granted the motion to dismiss "as to [plaintiff's] failure to warn theory based upon labeling & packaging *only* due to pre-emption" by FIFRA.

The defendants also sought summary judgment, making the same argument as to plaintiff's entire cause of action for failure to warn. The trial court granted partial summary judgment, holding that the preemption extended to plaintiff's claims based on failure to warn by advertisements or other generalized means; by press releases or advisory circulars; by appropriate store displays, shelf placards, or counter signs; by limiting sale of the product so the sale does not exceed the scope of potential buyers who would not be adequately warned by labels on the product; and by disseminating any other type of warning which did not per se require that it be affixed as a label or to the package itself. The trial court concluded:

"[R]eferring to plaintiff's four legal theories as stated in the pretrial order, this ruling restricts theory 1 [negligence], leaves theory 2 [failure to adequately test]

untouched, eliminates theory 3 [failure to warn], and restricts theory 4 [strict liability] to the extent it is based upon a failure to adequately warn or instruct. The court accepts plaintiff's explanation that his theory 4 includes strict liability based upon failure to warn/instruct, even though that basis may not appear from the express language in the pretrial order, and therefore finds it unnecessary to amend the pretrial order to make that clear."

Plaintiff then filed a "motion for pretrial determination of question of law, and motion to reconsider court's ruling granting summary judgment on failure to warn claim." The plaintiff set forth this question:

"Whether plaintiff's contention that 2,4-D causes non-Hodgkin's Lymphoma is a sufficient 'defect' to state a claim under Restatement, Second, Torts, sec. 402A, when the defendants are not contending that their product is an 'unavoidably unsafe' product pursuant to the 'comment k' exception to § 402A, Restatement, Second of Torts."

Plaintiff also stipulated that his claims for manufacturing or design defect based on negligence and failure to adequately test the product should be dismissed as independent bases of liability.

The trial court answered plaintiff's pretrial question of law in the affirmative, holding:

"[I]f Plaintiff proves as he alleges, that Defendants' chemical product causes cancer (non-Hodgkin's lymphoma), he will not be required to prove a more specific 'defect'. It would then be a question of fact for the jury to determine whether the Defendants' chemical product was in a 'defective condition unreasonably dangerous', using the definition of 'unreasonably dangerous' set forth in the fourth paragraph of PIK Civ. 2d (Supp.) 13.21 (the 'consumer expectation test')."

The trial court next ruled, upon defendants' motion for pretrial determination of a question of law, that plaintiff's claims based on the "consumer expectation test" were inextricably related to the issue of the adequacy of the defendants' labeling and packaging information. The court therefore held that its grant of partial summary judgment precluded plaintiff's strict liability claim as well. Because of this ruling, the court determined that all of plaintiff's claims had been adjudicated or otherwise disposed of, and the case was dismissed.

Plaintiff appealed and defendants cross-appealed. The appeals were transferred to this court pursuant to K.S.A. 20-3017. This

court permitted Public Citizen and Trial Lawyers for Public Justice to file an *amici curiae* brief. Plaintiff's claims against defendants other than those named herein were disposed of. Prior to this action, Amchem Products, Inc., merged into Union Carbide Agricultural Products, Inc., which in turn merged into Rhone Poulenc Ag Company. The remaining defendants are Rhone Poulenc Ag Company, Platte Chemical Company, and Farmland Industries, Inc.

## I. FIFRA

The trial court held that FIFRA preempts state law claims based upon inadequate labeling and failure to warn. The court also held that plaintiff's strict liability claims were inextricably related to the adequacy of defendants' labeling and packaging information and, therefore, claims based on the "consumer expectation test" were also preempted. Plaintiff argues that FIFRA does not preempt any state damages actions and that strict liability claims based on inherent defects are also not preempted. The question before this court is whether FIFRA does preempt state damages actions and, if so, which such actions are preempted.

The doctrine of federal preemption is founded on the Supremacy Clause, U.S. Const. art. VI, cl. 2:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Thus, any "state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608 (1992). The preemption analysis presumes that police powers historically left to the states are not superseded by federal law. *Cipollone,* 120 L. Ed. 2d at 422; *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1023 (5th Cir. 1994). The presumption against federal preemption of state law may be overcome if Congress intended preemption. See *Cipollone,* 120 L. Ed. 2d at 422; *MacDonald,* 27 F.3d at 1023. Preemption may be express or implied:

"Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' [Citation omitted.] In the absence

of an express congressional command, state law is pre-empted if that law actually conflicts with federal law [citation omitted], or if federal law so thoroughly occupies a legislative field ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' [Citations omitted.]" *Cipollone*, 420 L. Ed. 2d at 422-23.

FIFRA appears at 7 U.S.C. § 136 *et seq*. FIFRA was originally enacted in 1947, and the Department of Agriculture was responsible for its enforcement. See *Papas v. Upjohn Co.*, 926 F.2d 1019, 1022 (11th Cir. 1991) *(Papas I)*. It was intended as a licensing and labeling statute for pesticides. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. 1993). In 1972, FIFRA was completely revised and enforcement responsibility was transferred to the Environmental Protection Agency (EPA). Two purposes of the 1972 revisions were to " '(A) regulate the use of pesticides to protect man and his environment; and (B) extend Federal pesticide regulation to actions entirely within a single State.' S. Rep. No. 92-838, 92d Cong. 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin. News 3993." *Papas I*, 926 F.2d at 1022.

Among the provisions of FIFRA are comprehensive requirements concerning the content of labels affixed to products.

"FIFRA provides a detailed scheme for regulating the content of an herbicide's label. All herbicides sold in the United States must be registered for use by the EPA. 7 U.S.C. § 136a(a). The EPA has promulgated comprehensive labeling requirements governing the scope, content, wording and format of herbicide labeling. 40 C.F.R. § 156 (1992). The manufacturer itself designs and formulates the content of the label, and must file with the EPA a statement which includes 'the name of the pesticide,' 'a complete copy of the labeling of the pesticide, a statement of all claims to be made for it and any directions for its use,' and 'a full description of the tests made and the results thereof upon which the claims are based.' 7 U.S.C. § 136a(c)(1)(B)-(D)." *King v. E.I. Dupont de Nemours and Co.*, 996 F.2d 1346, 1347 (1st Cir. 1993).

See also *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir. 1993) *(Worm II)* ("In addition, it is a violation of FIFRA for any person to alter, in whole or in part, any required labeling. 7 U.S.C. § 136j[a][2].").

Although FIFRA provides a comprehensive scheme for regulating pesticides, Congress gave certain regulatory power to the states and also withheld certain power from the states. 7 U.S.C. § 136v (1988) provides in part:

"(a) **In general** A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act.

"(b) **Uniformity** Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act."

Plaintiff argues that the preemption doctrine applies only to positive requirements imposed by states; common-law damages actions are not positive enactments imposed by states. Plaintiff asserts that FIFRA does not indicate a legislative intent to preempt common-law actions. Plaintiff also points to subsequent legislative activity to support his position against preemption. Although a majority of courts addressing FIFRA preemption prior to the United States Supreme Court decision in *Cipollone,* 120 L. Ed. 2d 407, held against preemption, plaintiff acknowledges that the majority of courts since *Cipollone* have held that FIFRA does preempt some state law actions. Federal, rather than state, law governs whether and to what extent FIFRA preempts a cause of action arising out of a failure to warn.

In *Cipollone,* the Supreme Court construed the preemptive effect of the Federal Cigarette Labeling and Advertising Act, enacted in 1965, and its successor, the Public Health Cigarette Smoking Act of 1969. The 1965 Act mandated the following warning in § 4: "Caution: Cigarette Smoking May Be Hazardous to Your Health." 120 L. Ed. 2d at 421. The preemptive provisions in § 5 of the 1965 Act provided in part:

" '(a) No statement relating to smoking and health, other than the statement required by § 4 of this Act, shall be required on any cigarette package.

'(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.' " 120 L. Ed. 2d at 421.

The 1969 Act strengthened the mandated warning and modified the preemption provision by replacing subsection (b) with the following provision:

" '(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any

cigarettes the packages of which are labeled in conformity with the provisions of this Act.' " 120 L. Ed. 2d at 422.

The plurality (Rehnquist, C. J., and Stevens, White, Blackmun, O'Connor, Kennedy, and Souter, JJ.) held that the 1965 preemption provision "merely prohibited state and federal rule-making bodies from mandating particular cautionary statements on cigarette labels (§ 5(a)) or in cigarette advertisements (§ 5(b))." 120 L. Ed. 2d at 424. Thus, only positive enactments that mandate particular warnings were preempted, and state law damages actions were not preempted under the 1965 Act. 120 L. Ed. 2d at 424.

A different result was reached with respect to the preemptive effect of the 1969 Act. The plurality (Rehnquist, C. J., and Stevens, White, and O'Connor, JJ., with Scalia and Thomas, JJ. concurring in part and dissenting in part) held that plaintiff's common-law damages actions were preempted to some extent. Three justices would have found no preemption, four justices would have found preemption of some of plaintiff's claims, and two justices would have found preemption of all of plaintiff's claims. Thus, the plurality holding of the Court was that some of plaintiff's common-law damages claims were preempted and some were not.

The plurality reasoned that the plain language of the preemptive provision in the 1969 Act was much broader than the language in the 1965 Act. The 1965 Act barred only "statements" but the 1969 Act barred "requirement[s] or prohibition[s]." Moreover, the 1965 Act related only to "advertising" while the 1969 Act related to "advertising or promotion." 120 L. Ed. 2d at 425. The plurality found no distinction between positive enactments and the common-law and stated, "[C]ommon law damages actions of the sort raised by petitioner are premised on the existence of a legal duty and it is difficult to say that such provisions do not impose 'requirements or prohibitions.' " 120 L. Ed. 2d at 426. The plurality also recognized that the phrase "state law" includes the common-law as well as statutes and regulations. 120 L. Ed. 2d at 426.

The plurality set forth the following "test" to determine which of plaintiff's claims were preempted: "[W]e ask whether the legal

duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." 120 L. Ed. 2d at 427. The plurality held that plaintiff's failure to warn claims were preempted but claims based "solely on respondents' testing or research practices or other actions unrelated to advertising or promotion" were not preempted. 120 L. Ed. 2d at 428. Plaintiff's claim of fraudulent misrepresentation based on a state law prohibition against advertising and promotion which minimized the health hazards of smoking was also preempted. 120 L. Ed. 2d at 431.

The majority of courts since *Cipollone* have held that common-law actions based on inadequate labeling or failure to warn are preempted by FIFRA. See, *e.g.*, *MacDonald*, 27 F.3d 1021; *Worm II*, 5 F.3d 744; *King*, 996 F.2d 1346; *Shaw*, 994 F.2d 364; *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.), *cert. denied* 126 L. Ed. 2d 248 (1993) (*Papas II*); *Arkansas-Platte & Gulf v. Van Waters & Rogers*, 981 F.2d 1177 (10th Cir.), *cert. denied* 126 L. Ed. 2d 30 (1993) (*Arkansas-Platte II*). Of note prior to the *Cipollone* decision are *Arkansas-Platte & Gulf v. Van Waters & Rogers*, 959 F.2d 158 (10th Cir. 1992) (*Arkansas-Platte I*); *Papas I*, 926 F.2d 1019; and *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C. Cir.), *cert. denied* 469 U.S. 1062 (1984).

In *Ferebee*, the court held that FIFRA did not expressly or implicitly preempt a state damages action based on inadequate labeling. The court stated: "The fact that EPA has determined that Chevron's label is adequate *for purposes of FIFRA* does not compel a jury to find that the label is also adequate *for purposes of state tort law* as well." 736 F.2d at 1540. Despite the FIFRA prohibition against imposing labeling requirements in addition to those mandated by the EPA, the court reasoned that a state "could decide that, as between a manufacturer and an injured party, the manufacturer ought to bear the cost of compensating for those injuries that could have been prevented with a more detailed label than that approved by the EPA." 736 F.2d at 1541. A verdict imposing liability "does not command Chevron to alter

its label—the verdict merely tells Chevron that, if it chooses to continue selling [its product] in Maryland, it may have to compensate for some of the resulting injuries. [I]t is not equivalent to a direct regulatory command that Chevron change its label." 736 F.2d at 1541. The court also pointed out the savings clause in 7 U.S.C. § 136v(a) permitting states to impose more stringent constraints on the use of products approved by the EPA and stated:

"[I]f a state chooses to restrict pesticide use by requiring that the manufacturer compensate for all injuries or for some of these injuries resulting from *use* of a pesticide, federal law stands as no barrier. . . . As a result, [a state] is entitled to control the use of [a product] for compensatory aims by holding Chevron liable for injuries that could have been prevented by a more adequate label." 736 F.2d at 1541.

See also *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992) (following *Ferebee*, common-law tort actions are not preempted as state tort law serves different purpose than FIFRA).

*Papas I*, 926 F.2d 1019, reached a different result. The Eleventh Circuit held that FIFRA impliedly preempted state common-law tort claims for inadequate labeling. The court concluded that Congress had occupied the entire field of labeling regulation and that a jury award of damages would result in direct conflict with federal law. 926 F.2d at 1025. The court stated:

"A jury determination that a label was inadequate would require that the manufacturer change the label or risk additional suits for damages. Such a change, if permitted by the EPA, would destroy the uniformity that Congress and the EPA seeks to achieve in pesticide labeling because the warning label for that pesticide would not be based on the same criteria the EPA uses to establish warnings for all other pesticides." 926 F.2d at 1025-1026.

The court concluded that allowing state common-law damages actions based on inadequate labeling would permit a jury to do what the state legislature and state administrative agencies cannot do: impose requirements for labeling pesticides. 926 F.2d at 1026.

The United States Supreme Court granted *certiorari* in *Papas I* and vacated the judgment and remanded for further consideration in light of *Cipollone. Papas v. Zoecon Corporation*, ____ U.S. ____, 120 L.Ed. 2d 892, 112 S. Ct. 3020 (1992). In *Papas II*, 985 F.2d 516, the Eleventh Circuit held that FIFRA expressly

preempts state common-law damages claims based on inadequate labeling. Acknowledging *Cipollone*'s holding that common-law damages actions are a form of state regulation, the *Papas II* court held that "[t]o the extent that state law actions for damages depend upon a showing that a pesticide manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements, § 136v pre-empts the claims." 985 F.2d at 518. Under the court's analysis, not only were claims based solely on inadequate labeling preempted, but also claims based on failure to warn by means other than labeling were preempted.

"[A]ny claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging. If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends." 985 F.2d at 519.

Moreover, the court found that claims based on breach of implied warranty were preempted because, unlike in *Cipollone* where the plurality held that an express warranty was imposed by the warrantor rather than the State, an implied warranty is a requirement imposed under state law. *Papas II*, 985 F.2d at 519. However, claims that did not challenge labeling and packaging were not preempted. 985 F.2d at 520.

*Arkansas-Platte I*, 959 F.2d 158, was also decided prior to *Cipollone*. The court declined to follow *Ferebee* and rejected *Ferebee*'s "choice of reaction" analysis. As with *Papas I*, the United States Supreme Court granted *certiorari* in *Arkansas-Platte I* and vacated the judgment and remanded for further consideration in light of *Cipollone. Arkansas-Platte & Gulf v. Dow Chemical Co.*, ___ U.S. ___, 121 L. Ed. 2d 235, 113 S. Ct. 314 (1992). In *Arkansas-Platte II*, 981 F.2d 1177, the Tenth Circuit reaffirmed *Arkansas-Platte I*. The court found that the labeling provision in 7 U.S.C. § 136v(b) is as inclusive as the preemptive provision in the 1969 Act construed in *Cipollone*. Although the words of the two preemptive provisions are different, "their effect is the same." 981 F.2d at 1179. The court stated:

"[A] state common-law duty to warn is nothing more than a duty to label a product to provide information. In that sense, the common-law duty is no less a 'requirement' in the preemption scheme than a state statute imposing the same burden. The objectives of the common-law duty and a regulatory statute are the same. Both address a manufacturer's duty to convey information about a product through the medium of a label. That a common-law action can result in an award of damages to an injured party does not detract from the ultimate purpose of imposing a duty to warn the users of a product about its potential dangers or other properties. Therefore, we believe it only logical to hold that the common-law duty to warn is subjected to the same federal preemptive constraints as a state statute." 981 F.2d at 1179.

Thus, the court held that FIFRA expressly preempts state tort claims based on labeling and packaging.

Other courts since *Cipollone* have also found that FIFRA preempts state law damages actions, either expressly or impliedly. For example, in *Shaw*, 994 F.2d at 370-71, the court held that the preemptive language of FIFRA is as sweeping as the preemptive provision in the 1969 Act construed in *Cipollone*. The court held that FIFRA expressly preempts state law damages actions based on labeling.

In *King*, 996 F.2d at 1347, the plaintiffs alleged negligent failure to warn and strict liability claims; however, plaintiffs conceded that the sole basis of their claims was the defendants' failure to provide adequate warnings. The First Circuit, discussing *Cipollone*, held that FIFRA preempts state law tort claims based on failure to provide adequate warnings. 996 F.2d at 1349. The court found support for its conclusion in the legislative history of the 1972 amendments to FIFRA:

"The Senate Committee Report on the provision stated that section 136v(b) 'preempts any State or local government labeling or packaging requirements differing from such requirements under the Act.' S. Rep. No. 92-970, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4092, 4128. *See also* S. Rep. No. 92-838, 92d Cong., 2d Sess. 30 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4021 (the provision 'preempts any State labeling or packaging requirements differing from such requirements under the Act'). The House Committee Report stated: '[i]n dividing the responsibility between the States and the Federal Government for the management of an effective pesticide program, the Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging.' H.R. Rep. No. 92-511, 92d Cong.,

2d Sess. 16 (1971), U.S. Code Cong. & Admin. News 1972, p. 3993." 996 F.2d at 1349-50.

Citing *Papas II, Arkansas-Platte II,* and *Shaw* with approval and finding that *Ferebee* was not persuasive (and also noting that *Ferebee* was decided prior to *Cipollone*), the court held that plaintiffs' claims were preempted by FIFRA.

In *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir. 1993) (*Worm II*), plaintiffs' claims included negligence (negligent failure to test, negligent manufacture, negligent marketing, and negligent failure to warn) as well as breach of express and implied warranty claims and a strict liability claim that the product was defective due to inadequate warnings. In *Worm v. American Cyanamid Co.,* 970 F.2d 1301, 1308 (4th Cir. 1992) (*Worm I*), decided five days before *Cipollone,* the Fourth Circuit held that FIFRA preempts enforcement or establishment of a common-law duty which would impose a labeling requirement. See *Worm II,* 5 F.3d at 747. The court remanded the case to the district court to determine which of plaintiffs' claims were preempted. On appeal after remand, the court reaffirmed its decision that FIFRA preempts state law claims based on failure to warn or communicate information about a product through its labeling. *Worm II,* 5 F.3d at 747. The court created a "test" for determining whether a claim is preempted: "[T]he issue may nevertheless be resolved by looking to, as one factor, whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label." 5 F.3d at 747-48. The court determined that plaintiffs' claims involving a challenge to the adequacy of the warnings on the labeling or other materials distributed with the products were preempted. The court agreed with the *Papas II* court and extended the preemptive effect of FIFRA to claims based on the adequacy of warnings on materials other than the product labels. 5 F.3d at 748. However, the court held that claims based on negligent testing, formulation, and manufacture were not preempted. 5 F.3d at 749.

Finally, *MacDonald v. Monsanto Co.,* 27 F.3d 1021 (5th Cir. 1994), held that FIFRA expressly preempts state damages actions

based on labeling and failure to warn which would impose or effect different or additional labeling requirements. Plaintiffs set forth an argument similar to the "choice of reaction" analysis in *Ferebee*, which the Fifth Circuit rejected: "If plaintiffs could recover large damage awards because the herbicide was improperly labeled under state law, the undeniable practical effect would be that state law *requires* additional labeling standards not mandated by FIFRA; it cannot be presumed that businesses wish to bring about their own economic suicide." *MacDonald*, 27 F.3d at 1025.

Other post-*Cipollone* decisions addressing preemption include *Kolich v. Sysco Corp.*, 825 F. Supp. 959 (D. Kan. 1993) (failure to warn claims preempted); *Couture v. Dow Chemical U.S.A.*, 804 F. Supp. 1298 (D. Mont. 1992) (only positive enactments concerning labeling preempted; failure to warn claim is not a labeling requirement and is not preempted); *Burke v. Dow Chemical Co.*, 797 F. Supp. 1128 (E.D.N.Y. 1992) (express preemption to some extent, but no implied preemption; court seems to indicate that strict liability claim based on risk-utility test would not be preempted); *Yowell v. Chevron Chemical Co.*, 836 S.W.2d 62 (Mo. App. 1992) (plaintiffs' claims challenged the adequacy of pesticide labels; court held that FIFRA preempted all of plaintiffs' claims, including strict liability claim, because Congress intended to occupy the field of pesticide labeling; court rejected the *Ferebee* "choice of reaction" analysis); *Davidson v. Velsicol Chemical*, 108 Nev. 591, 834 P.2d 931 (1992), *cert. denied* 123 L. Ed. 2d 650 (1993) (FIFRA impliedly preempts state tort law actions; court found *Cipollone* not instructive).

The thorough discussion of the preemption analysis set forth in *Papas II, Arkansas-Platte II*, and *King* is persuasive. Section 136v(b) prohibits states from imposing or continuing any requirement for labeling or packaging different from those required under FIFRA. As the decision in *Cipollone* makes clear, state law tort claims may constitute "requirements." "[A] state common-law duty to warn is nothing more than a duty to label a product to provide information. In that sense, the common-law duty is no less a 'requirement' in the preemption scheme than a state statute imposing the same burden." *Arkansas-Platte II*, 981 F.2d at 1179. Thus, any state law tort

claim which affects the labeling or packaging of the 2,4-D products involved here is preempted by FIFRA.

The plaintiff points to isolated statements from the legislative history of the 1972 amendments to FIFRA as well as subsequent legislative history to support his contention that state law damages actions are not preempted. On the contrary, the legislative history supports the conclusion that state law tort claims are preempted. See, *e.g.*, H.R. Rep. No. 511, 92d Cong., 2d Sess. 1-2 (1972) ("State authority to change Federal labeling and packaging is completely preempted."); H.R. Rep. No. 511, 92d Cong., 2d Sess. 16 (1972) ("[T]he Committee has adopted language which is intended to completely preempt State authority in regard to labeling and packaging."); S. Rep. No. 92-970, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4092, 4128 (§ 136v(b) "preempts any State or local government labeling or packaging requirements differing from such requirements under the Act."); S. Rep. No. 838, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3993, 4021 (§ 136v(b) "preempts any State labeling or packaging requirements differing from such requirements under the Act."). Plaintiff's reliance on subsequent legislative history showing an intent that common-law causes of action are not preempted is also misplaced. The plain language of § 136v(b) and its legislative history show a preemptive intent, and subsequent legislative history cannot negate that intent. State law tort claims based on labeling or packaging constitute "requirements for labeling or packaging," and such claims are expressly preempted by § 136v(b).

Plaintiff also argues that reliance on the post-*Cipollone* line of cases holding that FIFRA preempts state damages actions is inappropriate because those cases ignore that the Acts construed in *Cipollone* did not have a savings clause similar to the one found in FIFRA, § 136v(a). This argument fails as well. FIFRA does contain a savings clause giving states the power to regulate the sale or use of products as long as states do not permit a sale or use prohibited by FIFRA, whereas the 1969 Act construed in *Cipollone* contained no such provision. However, the preemptive provision in § 136v(b) expressly narrows and limits the grant of

power to states in § 136v(a). *Cipollone* holds that state law damages actions constitute "requirements," and this holding is sound despite the presence or lack of an express savings clause. A common-law tort claim which challenges the labeling or packaging of products governed by FIFRA constitutes a "requirement for labeling or packaging" barred by § 136v(b) notwithstanding the general grant of power in § 136v(a).

Next, plaintiff cites several decisions in which the United States Supreme Court found no preemption "where preemption will leave a person with no remedy for common-law wrongs." See *International Paper Co. v. Ouellette*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805 (1987); *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 84 L. Ed. 2d 169, 105 S. Ct. 1245, *reh. denied* 471 U.S. 1062 (1985); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615 (1984). Plaintiff discusses *Silkwood*, where the Court found no Congressional intent to interfere with state common-law remedies and stated, "This silence takes on added significance in light of Congress' failure to provide any federal remedy for persons injured by such conduct. It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." 464 U.S. at 251. Plaintiff seems to reason that preemption of a state remedy cannot be found unless Congress has provided an alternative remedy. However, § 136v(b) and its legislative history clearly evince an intent to preempt any requirements concerning labeling and packaging beyond the requirements of FIFRA. State law damages actions constitute requirements. The preemptive effect is clear notwithstanding Congress' failure to provide an alternative remedy. In any event, plaintiff has a cause of action for such things as negligent testing, defective design, and manufacturing defects.

Finally, plaintiff argues that the goal of a jury award is compensation rather than regulation. Plaintiff reasons that the "choice of reaction" analysis set forth in *Ferebee* indicates that a state common-law tort award does not solely impose a "requirement" concerning labeling but rather serves the purpose of compensation. This "choice of reaction" analysis was expressly rejected

in *MacDonald*, 27 F.3d at 1025; *Arkansas-Platte I*, 959 F.2d at 162; *Yowell*, 836 S.W.2d at 65; and *Davidson*, 108 Nev. at 601. One goal of a jury award may be compensation, but the award has a substantial regulatory effect. A defendant found liable will most certainly take steps to avoid liability in the future. Thus, a defendant found to have failed to warn of the dangers of its product will certainly seek to amend the label of that product. Much can be said as to why such a practice should be encouraged. However, we are not writing on a clean slate. The preemption issue is a federal issue and all of the United States Circuit Courts that have considered the issue (1st, 4th, 5th, 10th, and 11th, plus our own United States District Court for the District of Kansas), have held against plaintiff's position. Congress, of course, can change the result by amending FIFRA. An example of a savings clause on common-law actions is set out and discussed by the Supreme Court of Arizona in the case of *Hernandez-Gomez v. Leonardo*, 180 Ariz. 297, 884 P.2d 183 (1994).

*Amici curiae* Trial Lawyers for Public Justice and Public Citizen advance arguments not made by plaintiffs in urging this court to find that state law damages actions are not preempted by FIFRA. First, *amici* point out that § 136v(a) gives states the power to "regulate" the sale or use of products. Because § 136v(b) begins with the words "Such state," that section limits the preemption to states which are regulating under § 136v(a). Because "regulate" refers only to positive legislative or rulemaking actions, the term "requirements" in § 136v(b) is limited to positive enactments and does not extend to common-law causes of action. See, *e.g.*, *Couture v. Dow Chemical U.S.A.*, 804 F. Supp. 1298.

A similar argument was rejected in *King v. E.I. Dupont de Nemours and Co.*, 996 F.2d 1346, 1349 (1st Cir. 1993):

"Subsection (a), however, is a grant of authority to the states to regulate the 'sale or use' of pesticides, not a limitation upon the preemptive effect of subsection (b). The word 'Such' in subsection (b) does not limit to state regulation the state 'requirements for labeling or packaging' which that section preempts."

We agree. Section 136v(a) does give authority to states to regulate the sale or use of products. However, § 136v(b) expressly prohibits states from imposing or continuing in effect any requirements con-

cerning labeling or packaging beyond the requirements of FIFRA. A state law damages action based on a claim of inadequate labeling constitutes a "requirement" and therefore is preempted by § 136v(b).

*Amici* also argue that a state law damages action for failure to warn does not impose a requirement for labeling and packaging beyond that required by FIFRA. Under FIFRA, the EPA does not design the labels affixed to products; rather, companies seeking to register products devise the labels affixed to their products. FIFRA requires labels to contain adequate warnings, and registrants have an ongoing duty to ensure that their labels provide adequate warnings. A jury determination that a registrant failed to warn is merely a finding that the product was "misbranded" because the product did not provide adequate warnings. A state damages action provides a means of compensating those harmed by products which are misbranded in violation of FIFRA. Thus, a state law damages action for failure to warn imposes no requirements in addition to or different from those required under FIFRA. That the result of liability is a label change is not a requirement in addition to or different from FIFRA requirements, according to the *amici*, because FIFRA itself places on registrants the obligation to ensure their product labels provide adequate warnings.

The Eleventh Circuit in *Papas I* and *Papas II* rejected this argument.

"For EPA-registered pesticides, the warning and use statements present on the labels indicate that the EPA has determined that those statements are adequate to protect man and the environment: that the pesticide as labeled does not pose 'any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide.' *See* 7 U.S.C.A. §§ 136(q)(1)(F), 136(q)(1)(G), 136(bb); 40 C.F.R. §§ 156.10(h), 156.10(i). Thus, a jury determination, via a state common tort judgment, that a pesticide's labeling is inadequate results in a direct conflict with the EPA's determination that the labeling is adequate to protect against health risks. Such a jury determination is also in direct conflict with the Congressional intent that *the EPA Administrator* determine the reasonableness of the risks to man and the environment posed by pesticides, at least with respect to the labeling of pesticides." *Papas I*, 926 F.2d at 1025.

"As we noted in *Papas I*, it is for the EPA Administrator, not a jury, to determine whether labelling or packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made. *See Papas I, supra*, 926 F.2d at 1026 n. 8. States may not interfere with the methods designed by Congress to achieve FIFRA's goals. [Citation omitted.] We think FIFRA leaves states with no authority to police manufacturers' compliance with the federal procedures." *Papas II*, 985 F.2d at 519.

A jury verdict finding that a product's label or warnings were inadequate directly conflicts with the FIFRA scheme vesting the EPA Administrator with determining which products to register and with approving the labels affixed to those products. FIFRA defines "misbranded" products in 7 U.S.C. § 136(q) (1988). It is unlawful to distribute or sell any misbranded products or to alter any label required by FIFRA. 7 U.S.C. §§ 136j(a)(1)(E) and 136j(a)(2)(A) (1988). Civil penalties for violations of FIFRA are assessed by the EPA Administrator. 7 U.S.C. § 136*l*(a)(1) (1988). Thus, any common-law cause of action in which the labeling of a product regulated by FIFRA is alleged to be inadequate necessarily conflicts with the EPA Administrator's authority to determine whether labeling is inadequate or whether a product is misbranded.

Having held § 136v(b) preempts a state tort claim imposing requirements for the labeling and packaging of defendants' 2,4-D products in addition to or different from FIFRA requirements, the next question is this: Which of plaintiff's claims constitute requirements concerning labeling or packaging?

It is not contested that defendants' labels complied with FIFRA requirements and were approved by the EPA Administrator, though defendants admit that their labels and other warnings did not warn that the products could cause cancer. There are no labels in the record and no evidence was introduced as to what was set out in the labels. However, plaintiff claims that the defendants' duty to warn could have been accomplished by means other than labeling and, therefore, a general failure to warn claim is not preempted. For example, plaintiff claims, defendants could have warned the public by advertisements or other generalized means; by press releases or advisory circulars to retailers for dissemination to the buying public; by appropriate store displays,

shelf placards or counter signs; by limiting sale of the product so that the sale would not exceed the scope of potential buyers who would not be adequately warned by labels on the product; or by disseminating any other type of warning which did not per se require that it be affixed by a label. Plaintiff cites *Burke v. Dow Chemical Co.*, 797 F. Supp. 1128.

The *Burke* court stated:

"Applying the somewhat subtle distinctions of *Cipollone*, if EPA-approved labels were in fact affixed to the relevant containers, plaintiffs may not claim that defendants' products were mislabeled. If, however, warnings to the trade, warnings apart from labels or packaging, limitation on sales to professionals, or other protections falling generally within the ambit of warnings should have been used when the content of the label was fixed by EPA there remains a liability question for the trier of fact. [Citation omitted.]" 797 F. Supp. at 1140.

The reasoning of *Papas II* is more persuasive. There, the court stated:

"[A]ny claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging. . . . Plaintiffs may not interfere with the FIFRA scheme by bringing a common-law action alleging the inadequacy of, for example, point-of-sale signs. Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user, we conclude that these claims are also pre-empted by FIFRA." 985 F.2d at 519.

See *Worm II*, 5 F.2d at 748. If defendants are required to give warnings by means other than labeling, those same warnings should be included in labeling. Thus, any negligence or strict liability failure to warn claim based on a claim that communication by means other than labeling was inadequate necessarily challenges the label and is preempted by § 136v(b) of FIFRA.

The trial court also held that plaintiff's strict liability claim was inextricably related to the issue of labeling and therefore that claim was preempted as well. The court's reasoning was based on PIK Civ. 2d 13.21 (1993 Supp.), which recommends the following jury instruction in strict products liability cases:

"A (manufacturer) (seller) who sells a product in a defective condition unreasonably dangerous to the (user) (consumer) is subject to liability for physical

harm (or property damage) thereby caused to the ultimate (user) (consumer) . . . .

"A product is in a defective condition if, at the time it leaves the (manufacturer's) (seller's) hands, it is in a condition which is unreasonably dangerous to the ordinary user.

"A condition is unreasonably dangerous if it is dangerous when used in the way it is ordinarily used considering the product's characteristics and common usage, and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

"The defect may be (in the product's preparation) (in the product's container or packaging) (in the instructions or warning necessary for the product's safe use)."

This instruction defines "unreasonably dangerous" according to the "consumer expectation test." The instruction is based on *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353 (1982), a 4-3 decision. Only two members of the present Kansas Supreme Court were on the *Lester* court, and they were on the majority. A recent California case rejects the "ordinary consumer expectations" instruction in complex products liability cases. That case presents a different approach and would be worthy of discussion were it not for the fact this issue is otherwise disposed of. See *Soule v. General Motors Corp.*, 8 Cal. 4th 548, 34 Cal. Rptr. 2d 607, 882 P.2d 298 (1994).

Plaintiff sought a pretrial ruling on a question of law, arguing that his contention that 2,4-D causes non-Hodgkin's lymphoma is a sufficient "defect" to state a strict liability claim without having to show a specific defect. The trial court agreed that plaintiff did not need to show a more specific defect than that defendants' 2,4-D products cause non-Hodgkin's lymphoma. This ruling is the subject of defendants' cross-appeal.

Based on the trial court's ruling on plaintiff's pretrial question of law, defendants sought a pretrial ruling. Defendants argued that if the plaintiff was not required to prove a specific defect, the test for strict liability set forth in PIK Civ. 2d 13.21 (1993 Supp.) was essentially a "pure consumer expectation test." Defendants reasoned that under the "pure consumer expectation test," the plaintiff would be required to show that defendants' products were dangerous to an extent beyond that contemplated

by the ordinary consumer. Because ordinary consumers base their understanding of the dangers of a product according to warnings communicated to them, and because warnings are communicated to consumers by labels, defendants reasoned that plaintiff's claims were preempted by FIFRA.

The trial court agreed, stating:

"[I]t seems to me that the question presented by the defense is within — the context of the answer to the question posed by the defense in this case, is within the context of the labeling, the packaging, and the communicating that's done by the manufacturers and sellers of these chemicals to the purchasers and to the community.

"And I'm persuaded today, that the question of the extent of the danger inherent in the product as set forth in the test articulated in PIK instruction 13.21 is so inextricably tied to the labeling, the packaging, that it's unavoidable for the jury to decide the question about the extent of the danger in the product without considering the labeling and the packaging.

"And once I arrive at that conclusion . . . that brings me to—unavoidably, to the conclusion that the preemption is going to apply to this part of the case also . . . ."

The trial court's ruling was based on the defendants' characterization of plaintiff's strict liability test under the facts of this case as a "pure consumer expectation test." We question whether there is such a thing as a strict liability claim based on a "pure consumer expectation test." As the PIK instruction and the discussion later in this opinion make clear, a strict liability claim requires proof of a defect. There are three types of defects: design, manufacturing, and warning defects. The effect of plaintiff's request for a pretrial ruling that he did not need to show a specific defect was to concede that he could not show a design defect. Plaintiff made no claim of evidence to prove a manufacturing defect. Thus, the only defect plaintiff could show was a warning defect. A strict liability warning defect claim is preempted under FIFRA. Therefore, the trial court's holding that all of plaintiff's claims were preempted under FIFRA was correct, though not because of the application of a "pure consumer expectation test."

The *Worm II* court aptly stated the test for determining whether a claim is preempted under FIFRA:

"The line between a claim for mislabeling and a claim for a defective product may not always be clear. . . . [T]he issue may nevertheless be resolved by looking to, as one factor, whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or the label." 5 F.3d at 747-48.

If in seeking to avoid liability the manufacturer would alter the label of its product, a state law damages action imposing liability would impose a requirement for labeling beyond the FIFRA requirements. Such an action is preempted under FIFRA. However, if in seeking to avoid liability the manufacturer would alter the product itself, rather than the product's label, a state law damages action imposing liability would impose no requirement for labeling beyond the FIFRA requirements, and § 136v(b) would not preempt such an action.

Generally, in seeking to avoid liability under a design defect strict liability action, a manufacturer would alter the design of its product rather than its label. Therefore, a design or manufacturing defect strict liability action is not preempted under FIFRA. However, in seeking to avoid liability under a warning defect strict liability action, a manufacturer would choose to alter the warnings associated with its product rather than alter the product itself, and the action would be preempted under FIFRA. Here, plaintiff did not claim he could prove a design defect, and his warning defect claim is preempted.

In conclusion, it is clear that § 136v(b) of FIFRA preempts state law damages actions which impose labeling requirements beyond the FIFRA requirements. Negligent failure to warn claims and strict liability failure to warn claims necessarily impose requirements concerning labeling because to avoid liability a manufacture would alter the labels affixed to its products; therefore, such claims are preempted under FIFRA. Design defect strict liability claims, on the contrary, do not impose requirements concerning labeling and such claims are not preempted under FIFRA. While plaintiff contends he has a viable strict liability claim, plaintiff's only strict liability claim is one alleging a warning defect. Because all failure to warn claims are preempted under FIFRA, plaintiff has no claim which survives preemption.

## II. IS FIFRA UNCONSTITUTIONAL?

Plaintiff argues that if this court finds his claims preempted under FIFRA, this court must find FIFRA unconstitutional. The trial court rejected this argument.

In his brief, plaintiff frames this issue as follows: "If it is determined that Congress intended FIFRA to preempt all state damage claims, then FIFRA must be found to be unconstitutional as violative of the Fifth Amendment's Due Process Clause." The simple answer to this issue is that FIFRA does not preempt *all* state damage claims; rather, FIFRA preempts only those state damage claims that impose different or additional labeling requirements. Claims based on design defects, manufacturing defects, and failure to test, for example, are not preempted.

Plaintiff points out that he abandoned his failure to test claim for the reason that he could not meet his burden of proof "because, to the extent that plaintiff relied upon the narrow 'contamination' issue to support his 'defect' claim, his own expert could not state it was the contaminants that 'caused' the cancer." Plaintiff concludes, "It cannot rationally be stated that a plaintiff is 'left with' some claims, when, under the facts and law, it is obvious he cannot prevail upon those claims. Under the law and facts herein, the obvious effect of the trial court's application of FIFRA, §136v(b), was to strip Jenkins of all of his common-law remedy or remedies." Plaintiff's inability to prove a cause of action is not equivalent to that cause of action being preempted. Plaintiff initially asserted theories of negligence, failure to test, failure to warn, and strict liability. It is only negligent failure to warn and strict liability failure to warn claims which are preempted by FIFRA. Plaintiff still has viable causes of action to remedy the harm he allegedly suffered by defendants' products even though one theory of liability is preempted. The fact that plaintiff is unable to meet his burden on other theories is a result of plaintiff's lack of proof rather than a result of preemption.

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law." Plaintiff reasons that a state law

damages action is a "liberty interest" deserving of constitutional protection against abrogation without due process. Plaintiff quotes language from *Planned Parenthood v. Casey*, 505 U.S. ___, 120 L. Ed. 2d 674, 695, 112 S. Ct. 2791 (1992), where the Supreme Court stated:

"Although a literal reading of the [Due Process] Clause [of the Fourteenth Amendment] might suggest that it governs only the procedures by which a State may deprive persons of liberty, for at least 105 years . . . the Clause has been understood to contain a substantive component as well, one 'barring certain government actions regardless of the fairness of the procedures used to implement them' [Citation omitted.] '[I]t is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure. Thus all fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States.' [Citation omitted.] '[T]he guaranties of due process, though having their roots in Magna Carta's "per legem terrae" and considered as procedural safeguards "against executive usurpation and tyranny," have in this country "become bulwarks also against arbitrary legislation." ' [Citations omitted.]"

Plaintiff points out that the Kansas Constitution recognizes a "fundamental constitutional right to have a remedy for an injury to person or property by due course of law." *Ernest v. Faler*, 237 Kan. 125, 131, 697 P.2d 870 (1985). Thus, the "long-recognized right to a remedy for the private, wrongful causation of serious personal injury should be deemed a liberty interest." Because, according to plaintiff, his right to a remedy by due course of law in this case is a fundamental right, the FIFRA provision preempting such a remedy must be narrowly tailored to serve a compelling state interest. The only interest exhibited by § 136v(b) is in promoting uniform labeling requirements. This interest, plaintiff asserts, is not compelling such that FIFRA must be interpreted as preempting his state law claims. Moreover, no quid pro quo is given in exchange for abrogating plaintiff's rights. Because preemption raises serious due process questions, plaintiff urges this court to construe FIFRA as not preempting his state law claims.

Plaintiff also points out that in *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 305, 111 L. Ed. 2d 224, 110 S. Ct. 2841 (1990) (Brennan, J., dissenting), the United States Su-

preme Court held that freedom from unwanted medical attention is fundamental. See also *Cruzan*, 497 U.S. at 278 ("a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"). Plaintiff asks, "If Gary Jenkins has a fundamental right 'to determine what shall be done with one's own body' in the context of medical treatment, why should that right not extend also to his right to be free from repeated, unwanted exposures to a toxic, cancer causing chemical?"

Defendants assert that plaintiff's interest in his state law claim is a property, rather than a liberty, interest. Liberty involves attributes of personhood, see *Casey*, 120 L. Ed. 2d at 698, and a state law claim is not an attribute of personhood. Rather, a state law claim is at best a specie of property. That property interest does not arise until a final unreviewable judgment has been obtained. Defendants reason that the proper standard of review requires only a rational basis, rather than a compelling interest, for the legislative action. Congress' belief that permitting states to regulate labeling and packaging of pesticides would interfere with its interest in uniform labeling and packaging requirements exclusively controlled by the EPA "can hardly be said to be irrational."

Kansas does recognize a quid pro quo requirement when rights under the Kansas Constitution are modified: "[T]he legislature, under its power to act for the general welfare, may alter common-law causes of action and constitutional rights if it provides an adequate quid pro quo." *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 361, 789 P.2d 541 (1990), *overruled in part on other grounds Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 (1991). In *Samsel*, this court found that a statute limiting noneconomic damages to $250,000 gave a sufficient quid pro quo by requiring that a court not exercise its discretion to award less than $250,000 where a jury awards higher damages. 246 Kan. at 362. In *Bair*, this court recognized that if the legislature creates a statutory remedy and abolishes the common-law remedy, "[t]he legislature, once having established a substitute remedy, cannot constitutionally proceed to emasculate the remedy, by amendments, to a point where it is no longer a viable and sufficient substitute

remedy." 248 Kan. at 844. Both of these Kansas cases involved rights arising out of the Kansas Constitution rather than the United States Constitution.

The United States Supreme Court has not recognized a quid pro quo requirement to the Due Process Clause:

"Our cases have clearly established that '[a] person has no property, no vested interest, in any rule of the common-law.' [Citations omitted.] The 'Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object,' [citation omitted], despite the fact that 'otherwise settled expectations may be upset thereby.' [Citations omitted.] Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts. [Citations omitted.]" *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 88 n.32, 57 L. Ed. 2d 595, 98 S. Ct. 2620 (1978).

Although FIFRA does not provide an alternate cause of action for the failure to warn actions preempted by § 136v(b), there is no requirement under the United States Constitution that an alternate cause of action be established. Plaintiff's state law claim does not constitute a liberty interest or fundamental right deserving of heightened scrutiny. Rather, the FIFRA provision preempting state law damages actions concerning labeling is cloaked in a presumption of constitutionality and the burden is on plaintiff to show that § 136v(b) is wholly arbitrary and irrational in purpose and effect, *i.e.*, not reasonably related to a legitimate congressional purpose. See *Hammond v. United States*, 786 F.2d 8, 13 (1st Cir. 1986).

Plaintiff has not met his burden here. Congress has vested the EPA with regulating all aspects of pesticide labeling and packaging in furtherance of the legitimate interest of uniformity. Preemption of state law damages actions is reasonably related to this purpose. The FIFRA provision which preempts state law claims is not unconstitutional.

### III. CROSS-APPEAL

Defendants perfected a cross-appeal from the trial court's ruling on plaintiff's pretrial question of law. Plaintiff argued to the trial court that because defendants were not claiming their 2,4-D products were unavoidably unsafe, plaintiff could establish a

strict liability claim by showing that 2,4-D causes non-Hodgkin's lymphoma without proving a more specific defect. The trial court agreed.

Kansas has adopted the doctrine of strict products liability as set out in the Restatement (Second) of Torts § 402A (1964). *Brooks v. Dietz*, 218 Kan. 698, Syl. ¶ 1, 545 P.2d 1104 (1976). In *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 54, 661 P.2d 348 (1983), this court stated, "[T]he plaintiff, to present a prima facie strict liability case, must produce proof of three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control." These elements are encompassed in the pattern instruction on strict liability. See PIK Civ. 2d 13.21 (1993 Supp.). PIK Civ. 2d 13.21 (1993 Supp.) was approved in *Siruta v. Hesston Corp.*, 232 Kan. 654, 668-69, 659 P.2d 799 (1983). The pattern instruction establishes three possible types of defects in strict products liability cases: "The defect may be (in the product's preparation) (in the product's container or packaging) (in the instructions or warnings necessary for the product's safe use)." These are commonly referred to as "design defects," "manufacturing defects," and "warning defects."

In *Lester v. Magic Chef, Inc.*, 230 Kan. 643, 641 P.2d 353 (1982), a majority of this court adopted the test set forth in comment *i* to § 402A for determining whether a product is unreasonably dangerous in design defect cases. Comment *i* provides in part that strict liability under § 402A

"applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. . . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

In *Lester*, this court acknowledged the requirement that a product be both defective *and* unreasonably dangerous. 230 Kan. at 650. This court rejected the plaintiff's argument that a risk-benefit test should be adopted for design defect cases, and instead adopted the comment *i* test, commonly referred to as the "consumer expectation test." 230 Kan. at 653.

This court has recognized the availability of the "comment $k$" exception to § 402A strict liability in cases of design defect. *Johnson v. American Cyanamid Co.*, 239 Kan. 279, 285, 718 P.2d 1318 (1986). Comment $k$ to § 402A provides in part:

"*Unavoidably unsafe products.* There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. . . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonably risk."

Plaintiff here points out that the defendants did not raise the comment $k$ exception as an affirmative defense in the trial court.

Plaintiff's argument here is that the defendants' 2,4-D products cause cancer. Essentially, plaintiff's argument is that he has to prove only that defendants' products cause cancer, and the burden then shifts to the defendants to argue that the products were unavoidably unsafe before plaintiff has to prove what kind of defect the products contain. Plaintiff argues that it is irrelevant whether this defect is classified as a design defect or manufacturing defect. However, it is clear that there is no manufacturing defect because plaintiff makes no claim that the products he used were somehow different than other 2,4-D products in their propensity to cause cancer.

Defendants point out that strict products liability requires proof that the product was defective. Defendants cite Beasley, Products Liability and the Unreasonably Dangerous Requirement, p.77 (1981): "[U]nder both negligence and strict tort liability the plaintiff must prove the injury was caused by the product, the product was defective, and the defect existed when the product left the hands of the defendant." If plaintiff is not required to prove a defect, defendants argue, plaintiff would be able to recover based merely on proof of causation, a result more akin to absolute liability than strict liability.

Defendants urge that to permit plaintiff to prevail on proof of causation alone, without a showing of a specific defect, leads to uncertainty and unfairness. Defendants argue that if plaintiff cannot prove any specific defect in the product, the proper theory is a warning defect. Defendants point out a similar holding in *Lenherr v. NRM Corp.*, 504 F. Supp. 165, 172 (D. Kan. 1980):

"A product is 'defective' when it leaves the seller's hands in a condition not contemplated by the ultimate consumer and as a consequence of such condition will be unreasonably dangerous to the consumer. Restatement (Second) of Torts § 402A, comment *g* (1965). The defect may arise from the design of the product. A product may also be defective without any ascertainable defect in the product and although the product was precisely what it was intended to be, if the manufacturer fails to give adequate and timely warnings as to the dangers or hazards which may result from a foreseeable use or misuse of the product. Restatement (Second) of Torts § 402A, comment *j* (1965)."

Further, in *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915 (1990), the parties stipulated that the product was not contaminated and was in the form and content intended by the manufacturer. This court found that "[p]laintiff has presented no evidence to show that metrizamide had a design defect that, if corrected, could have posed less of a risk" and therefore held that defendant's product was an unavoidably unsafe comment *k* product. The only theory of liability remaining was the adequacy of the warnings. 247 Kan. at 120-21.

Defendants assert:

"Strict liability in tort should only attach when, in the case of a claimed design defect, there was some aspect of the design of the product which could have been changed to make it safer; or in the case of a failure to warn, when the manufacturer, based upon knowledge available to him, should have provided adequate instructions for safe use; or in the case of a manufacturing defect, the product was not manufactured in conformity with its design."

According to defendants, Kansas cases addressing strict liability demonstrate that Kansas requires for design defect cases proof of some aspect of the design that could have been changed to make the product safer, and where the product could not be changed to make it safer, there is no design defect. Defendants cite *Savina*, 247 Kan. 105; *Johnson*, 239 Kan. 279; *Betts v. General Motors Corp.*, 236 Kan. 108, 689 P.2d 795 (1984); *Barnes v. Vega*

*Industries, Inc.*, 234 Kan. 1012, 676 P.2d 761 (1984); *Siruta*, 232 Kan. 654; and *Lester*, 230 Kan. 643.

In *Savina*, this court gave comment *k* protection to the manufacturer of a contrast agent used in a medical procedure. We recognized that comment *k* only applies to design defect cases and that for comment *k* protection to apply, the product must be properly prepared and it must be accompanied by proper directions and warnings. 247 Kan. at 115. Recognizing that "the danger created by using the drug cannot be eliminated," we held that "due to its benefits, the drug can be marketed provided it is accompanied by 'proper directions and warnings.'" 247 Kan. at 122. A similar result was reached in *Johnson*, involving a polio vaccine:

> "Orimune, the Sabin-type vaccine, is an 'unavoidably unsafe product' that is an 'apparently useful and desirable product, attended with a known but apparently reasonable risk' as a matter of law. Public policy requires that the mere manufacture of the vaccine not be actionable on the ground of design defect. The trial judge should have heard the evidence on this issue outside the presence of the jury and made the determination thereon. There is no claim that the vaccine administered to plaintiff's child was improperly manufactured or that a defective product was delivered. The vaccine was properly prepared and marketed and was exactly what it was intended to be. As a matter of law there is no manufacturing or design defect in the product at issue herein." 239 Kan. at 286.

The other cases cited by defendants are design defect cases in which there was a claim of a safer design.

Plaintiff reasons that because defendants do not claim their products were unavoidably unsafe, the allegation that defendants' products cause cancer is a sufficient defect. "[I]t is plaintiff's allegation that the product causes cancer which is the 'defective condition' upon which plaintiff relies in support of his strict liability claim." Plaintiff asserts that in *Mays*, 233 Kan. 38, this court recognized the viability of a "nonspecific defect" claim. Therefore, plaintiff reasons, he must merely prove that a "condition" of the product was unreasonably dangerous, and the fact that defendants' products cause cancer is just such a condition.

Plaintiff also cites *ISK Biotech Corp. v. Douberly*, 640 So. 2d 85 (Fla. Dist. App. 1994). In *Douberly*, the plaintiffs alleged their wa-

termelon crop was burned by a fungicide registered under FIFRA. The court found plaintiffs' failure to warn claims preempted. However, a strict liability design defect claim was not preempted. The court stated:

" '[W]hen a product malfunctions during normal operation, a legal inference, which is in effect a mirror reflection of the Restatement's standard of product defectiveness, arises, and the injured plaintiff thereby establishes a prima facie case for jury consideration.' [Citation omitted.] In other words, the malfunction itself constitutes evidence of a defect." 640 So. 2d at 88-89.

In response, defendants argue that a "nonspecific defect" theory, wherein a malfunction of the product is proof of a defect, applies only to manufacturing defect cases and not to design defect cases. *Mays*, relied upon by plaintiff, answered only the question of whether a manufacturing defect can be proven by circumstantial evidence.

The trial court's ruling that plaintiff need not prove a more specific defect than that defendants' 2,4-D products cause cancer effectively exempted plaintiff from having to prove defendants' 2,4-D products were defective. The ruling was in error.

The rationale for the doctrine of strict liability was stated in *Savina*, 247 Kan. at 114:

"The public policy considerations underlying the doctrine of strict liability are that the manufacturer can anticipate and guard against the recurrence of hazards, that the cost of injury, which may be overwhelming to an injured individual, can be distributed by the manufacturer among the consuming public, and that the marketing of defective products should be discouraged."

Imposing liability for a product without identifying what aspect of that product is defective does not further these public policy considerations.

Plaintiff's argument is that if he proves that the defendants' 2,4-D products caused his cancer, an inference that the 2,4-D products were defective arises. In *Mays*, 233 Kan. at 54, this court recognized that manufacturing defects "may be proven inferentially, by either direct or circumstantial evidence." While defendants assert that this rule is limited to manufacturing defect cases, plaintiff reasons that it is not. It would appear that either a design defect or a manufacturing defect can be proven by circumstantial

evidence. However, we disagree with *Douberly* to the extent it holds that the mere fact of an injury implies a design defect. *Douberly* talks about a product "malfunctioning." "Malfunction" indicates that a product performed other than as expected, and this lends itself more to a manufacturing defect argument than to a design defect argument, though the *Douberly* court made it clear plaintiff's claim was one of design defect. Inferring a defect from the fact of the injury, particularly where, as here, the product was exactly what the defendants intended and plaintiff makes no argument that the product could have been designed to more safely perform its intended function, is unsuitable.

The PIK instruction approved in *Siruta* defines "defective condition" as "a condition which is unreasonably dangerous to the ordinary user." "Unreasonably dangerous" is defined as "dangerous when used in the way it is ordinarily used considering the product's characteristics and common usage, and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics." Thus, not only is "unreasonably dangerous" defined in terms of the consumer expectations test, but "defect" is also defined by the consumer expectations test. Assuming that plaintiff and other ordinary consumers did not know that defendants' 2,4-D products cause non-Hodgkin's lymphoma, it would seem that plaintiff has established that defendants' 2,4-D products were both in a defective condition and unreasonably dangerous. Indeed, plaintiff's counsel argued to the trial court that plaintiff's own testimony that he did not know the products caused non-Hodgkin's lymphoma would be sufficient to sustain his burden of proof.

Plaintiff's characterization cannot be accurate. Plaintiff's construction would effectively read the last paragraph out of the PIK instruction: "The defect may be (in the product's preparation) (in the product's container or packaging) (in the instructions or warning necessary for the product's safe use)." This language is not mere surplusage. It shows that some specific defect must be established to prove a strict liability claim. This court's decision in *Siruta* provides support for this construction.

In *Siruta,* the plaintiff claimed that defendant's hay baler was defective because it was not designed with safety guards and shields to prevent injury. One issue on appeal concerned whether the trial court erred in permitting plaintiff's counsel to cross-examine defendant's expert witness about subsequent changes in the design of its hay baler. The subsequent changes included installing a guard. The defendant argued such evidence was of subsequent remedial measures inadmissible under K.S.A. 60-451. 232 Kan. at 666. This court disagreed, stating:

"In products liability cases, the plaintiff in sustaining its burden to prove that a product is defectively designed may properly show the *feasibility* of a safer design. [Citation omitted.] Logically, when defendant manufacturer's experts have testified that a particular design change is not feasible, it would seem that evidence of the incorporation of plaintiff's suggested design change in a later product of the defendant manufacturer would be highly relevant and admissible to prove its feasibility. In other words, in the field of products liability the rule excluding evidence of subsequent modifications has not been applied where such evidence is offered to show the technological or economic feasibility of alternative designs which would have prevented the injury." 232 Kan. at 667-68.

Generally, evidence of a safer alternative design seems to lend itself to a risk-benefit analysis. The risk-benefit analysis looks in part to whether there is a safer feasible alternative, whether such an alternative is cost effective, and whether there are risks associated with the alternative design. See *Lester,* 230 Kan. at 651. Evidence of a safer alternative design seems to have no place under the consumer expectations test, which merely looks to whether the product was more dangerous than the ordinary consumer expected. However, *Siruta* clearly approves proof of a safer alternative design in design defect cases. *Siruta* was decided after this court adopted the comment *i* consumer expectations test for design defect strict liability claims. It is clear from *Siruta* that even though Kansas has adopted the consumer expectations test, evidence of a feasible alternative design is admissible in design defect cases, though it probably is not required. Under the plaintiff's construction, however, there would be never be a need to show an alternative design because there is no need to show what about the design was defective. Clearly this is not a proper construction. While evidence of a safer alternative design is not

required in all cases, there must be a specific claim concerning what aspect of the design was defective for a plaintiff to prevail on a strict liability design defect claim.

Plaintiff's allegation that the defendants' 2,4-D products cause cancer is not sufficient to raise a claim of design defect, and the trial court erred in so holding. Plaintiff need not specifically prove a safer, cost-effective alternative unless defendants claim their products are unavoidably unsafe. Defendants have not claimed their products were unavoidably unsafe. (Defendants might not receive such protection because the doctrine requires proper warnings, and defendants here did not warn that their products could cause non-Hodgkin's lymphoma). However, the fact that defendants do not claim their products were unavoidably unsafe does not relieve plaintiff from his burden of proving that defendants' products were defective. Plaintiff has failed to identify what aspect of defendants' products was defectively designed. Therefore, plaintiff cannot prevail on a strict liability design defect claim.

Plaintiff makes no specific claim of a design or manufacturing defect strict liability claim. The only strict liability claim on which plaintiff has evidence is a warning defect claim. This claim is pre-empted by FIFRA.

Affirmed.