640 So.2d 85 (1994)
ISK BIOTECH CORPORATION, f/k/a Fermenta ASC Corporation, Appellant,
v.
William Penn DOUBERLY, Sr. and William Penn Douberly, Jr., Appellees.
Nos. 93-312, 93-991.
District Court of Appeal of Florida, First District.
June 20, 1994.
Rehearing Denied August 17, 1994.
*86 Paul J. Consbruck and Bruce Brashear of Watson, Folds, Steadham, Christmann, Brashear, Tovkach & Walker, Gainesville, for appellant.
W. Roderick Bowdoin, M. Blair Payne and Thomas J. Kennon of Darby, Peele, Bowdoin & Payne, Lake City, for appellees.
ERVIN, Judge.
ISK Biotech Corporation, a manufacturer of fungicides, appeals a final judgment entered against it that awarded appellees/plaintiffs damages on their claims for breach of express warranty, negligence and strict liability, resulting from the substantial destruction of appellees' watermelon crop, caused by the application of a fungicide produced by appellant. We affirm each of the issues ISK raises, but consider it necessary to address only the first: Whether the trial court erred in holding that plaintiffs' state tort claims were not preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C.A. §§ 136-136y (West 1980)).
Appellees, father and son, William Penn Douberly, Sr., and Jr., partners in a farming operation, planted approximately 130 acres of watermelons on their farm in Immokalee, Florida, in 1990. Before doing so, Douberly, Sr., conferred with A.L. Hammond, III, the manager of the Gold Kist Store in Trenton, Florida, concerning the proper application of fungicides to their crop. Douberly, Sr., testified *87 that he told Hammond he was illiterate and thus unable to read the labels and instructions on the use of the fungicides and asked for Hammond's assistance. Hammond confirmed that he and Douberly, Sr., discussed the fact that several other farmers had reported that Bravo 720, a relatively new broad-spectrum agricultural fungicide manufactured by ISK Biotech, was causing burns on watermelons. Based on information ISK had furnished to him, Hammond informed Douberly that Bravo 720 was safe for his intended use. Acting on this advice, Douberly, Sr., purchased the product, and Hammond instructed him on its use by explaining the contents of the label on a Bravo 720 jug.
In April 1990, Douberly sprayed, as instructed, 1.5 to 2 pints per acre of Bravo 720 to all but 10 acres of his watermelon crop, and, of the remaining acreage, applied Benlate to all but four rows, which were left untreated. The melons sprayed with Bravo 720 became severely scalded or burned and were unmarketable, whereas those that were not sprayed or were sprayed with Benlate suffered no damage.
The Douberlys promptly reported their loss to Hammond, who went to the field and prepared a complaint questionnaire, stating that the scalding appeared within two or three days after spraying; that the weather was moderately dry and the temperature between 60 and 80 degrees Fahrenheit; and that the Douberlys had a "valid complaint." ISK representatives thereafter visited the appellees' farm and following their inspection advised Douberly, Sr., that ISK would take care of the problem. When it did not, appellees commenced their action for damages.
At trial, several expert witnesses testifying on behalf of the plaintiffs opined that Bravo 720 was a defective product and that it caused the damage to their watermelons. Additionally, a number of farmers recounted similar experiences of damage to their watermelon crops following the use of Bravo 720. In its defense, ISK introduced the testimony of various experts, some of whom opined that the sun's rays caused the burns in question; that gas chromatography testing performed on the Douberlys' melons did not reveal the presence thereon of Bravo 720 residue; and that tests conducted with Bravo 720 had not disclosed burning. At the conclusion of trial, the jury returned a verdict against ISK on all counts and assessed damages at $167,913.63, and, after prejudgment interest was added, the total amount entered was $262,608.58.
Appellant's primary argument is that the packaging and labeling of Bravo 720 is regulated under the exclusive jurisdiction of the federal Environmental Protection Agency pursuant to the provisions of FIFRA, which preempts any cause of action requiring a showing that product information contained on labels does not clearly warn intended customers. Consequently, it contends that as the Douberlys' claims were based on evidence of inadequate labeling or warnings, federal law should have preempted the state action. Although we agree that the trial court erred in denying ISK's motion for summary judgment insofar as it related to plaintiffs' count alleging common law negligence based on a failure to warn, we do not reach a similar conclusion regarding the claims founded on breach of express warranty and strict liability, which we consider unrelated to any assertions of inadequate labeling. Our decision regarding the negligence count does not, however, require reversal of the final judgment because, for the reasons stated hereafter, we are convinced the error was harmless. In reaching our decision, we consider it helpful to recite a short history of FIFRA.
FIFRA was enacted in 1947 and strengthened in 1972 to establish registration and labeling standards for pesticides. The administrator of the Environmental Protection Agency customarily registers a pesticide after determining that the pesticide warrants the manufacturer's proposed claims, the labeling materials comply with FIFRA, and the product will not cause unreasonable adverse effects on the environment. DerGazarian v. Dow Chem. Co., 836 F. Supp. 1429, 1431-32 (W.D.Ark. 1993). Congress included an express preemption provision in 7 U.S.C. § 136v, as follows:
(a) In general. A State may regulate the sale or use of any federally registered pesticide or device in a state, but only if *88 and to the extent the regulation does not permit any sale or use prohibited by this Act.
(b) Uniformity. Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act.
Considerable litigation has ensued regarding the scope of the preemption under this provision. Since the United States Supreme Court decided Cipollone v. Liggett Group, Inc., 505 U.S. ___, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), addressing the reach of a similar preemption provision regarding cigarette packaging, federal courts have generally agreed that FIFRA preempts all state common law actions that are associated in any way with a claim of inadequate labeling. Under these decisions, FIFRA has been interpreted as precluding a cause of action that rests on a failure to warn or to communicate information about a product through its label, but authorizing claims involving negligent testing, express warranty or strict liability based upon a design defect at the time of manufacture. See, e.g., Worm v. American Cyanamid Co., 5 F.3d 744 (4th Cir.1993); Papas v. Upjohn Co., 985 F.2d 516 (11th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); DerGazarian, 836 F. Supp. 1429; Kennan v. Dow Chem. Co., 717 F. Supp. 799 (M.D.Fla. 1989).
In applying the above principles to the instant action, we conclude that the Douberlys' breach of express warranty theory, alleged in Count II, arose from facts showing that ISK Biotech had informed Hammond that he could assure farmers that Bravo 720 would not burn their watermelons.[1] This claim was entirely distinct from any representation made on the Bravo 720 label and involved a warranty clearly cognizable at law. Section 672.313(1), Florida Statutes (1989), regarding express warranties, provides:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
As the United States Supreme Court observed, an express warranty is something that is undertaken by the manufacturer and is not a requirement imposed by the state. Cipollone, 505 U.S. at ___, 112 S.Ct. at 2622, 120 L.Ed.2d at 428. See also Brennan v. Dow Chem. Co., 613 So.2d 131 (Fla. 4th DCA 1993) (FIFRA preempts state common law claims that rely on assertions of inadequate labeling and warnings, but not other claims, such as breach of warranty).
Similarly, the Douberlys' strict liability claim was in no way dependent upon proof of inadequate labeling or a failure to warn. Appellees alleged in Count VI that Bravo 720 caused damage to watermelons under certain weather conditions, and that the product was in a defective or dangerous condition at the time ISK delivered it to Gold Kist. The proof offered in support of the claim complied with the standard applicable to actions seeking damages for product defects. In Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981), this court, in deciding that the plaintiffs had established a case submissible for jury consideration, observed that the standard for all product defects under section 402A of the Restatement of Torts (Second) is the same, which asks whether "the ordinary consumer's expectations [were] frustrated by the product's failure to perform under the circumstances in which it failed?" Id. at 1144-45 (footnote omitted). We continued, saying: "[W]hen a product malfunctions during normal operation, a legal inference, which is in effect a mirror reflection of the Restatement's standard of product defectiveness, *89 arises, and the injured plaintiff thereby establishes a prima facie case for jury consideration." Id. at 1148. In other words, the malfunction itself constitutes evidence of a defect. Accord Jones v. Heil Co., 566 So.2d 565, 567 (Fla. 1st DCA 1990). Consequently, the Douberlys' strict liability claim was based solely on the product's defective condition and was therefore independent from any theory pertaining to inadequate labeling.
The Douberlys' negligence charge was, however, not unrelated. In Count V, appellees alleged that ISK had a duty to warn the Douberlys of potential damages in order to enable them to avoid or discontinue the product's use.[2] As previously observed, federal courts have repeatedly held that FIFRA preempts a cause of action for failure to warn that is linked to inadequate labeling. See Worm, 5 F.3d at 748 (and cases cited therein). Appellees assert in their answer brief that their negligence theory is not connected to labeling, but rather that "ISK became aware the product was defective after it was distributed to dealers and did not truthfully reveal such information when specific inquiry was made by Mr. Douberly," and that "in fact, one of ISK's representatives testified that ISK could have been disseminating warning information to distributors and county agents for dissemination to farmers and that such activity would not be prohibited or covered by FIFRA." It appears, therefore, from the record and appellees' brief that the Douberlys rest this count upon evidence showing that once ISK became aware of damage to other watermelons, it knew the existing Bravo 720 label was no longer adequate, and the company had a duty to inform buyers of the potential for damage resulting from the application of its product. On facts similar to those at bar, federal courts have rejected plaintiffs' contentions that their claims did not arise from any theory of inadequate labeling. See Papas v. Upjohn Co., 985 F.2d 516, 519 (11th Cir.1993) ("Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user, we conclude that these claims are also preempted by FIFRA.").
Although we are of the view that the failure-to-warn claim was erroneously permitted to go to the jury, we nonetheless decide that the error was harmless. The Douberlys requested and the jury was given a special verdict form asking jurors to determine separately whether ISK was liable under the theories of strict liability, breach of express warranty or negligence. The jurors found that ISK was liable under each claim, and they were not asked to apportion damages as to each. Consequently, because ISK has failed to show that FIFRA preempted the strict liability or express warranty claims, the judgment is supportable under either of those theories of liability. See, e.g., Thomas v. Wyatt, 405 So.2d 1369 (Fla. 4th DCA 1981) (even if there was error in permitting the jury to consider one of the plaintiff's three theories of liability, the judgment entered was sustainable based upon one of the other two positions, once the jury found in favor of the plaintiff on each claim in a special verdict form and did not separate damages).
We have examined appellant's remaining issues and conclude that they either were not timely preserved below, or that competent, substantial evidence supports the rulings of which appellant complains.
AFFIRMED.
JOANOS and KAHN, JJ., concur.
NOTES
[1] We do not reach the issue of whether the Douberlys proved that ISK breached an express warranty in the absence of privity, or under section 672.313, Florida Statutes (1989), because, by failing to raise the issue by motion for directed verdict at the close of all the evidence, ISK Biotech failed to preserve this issue for appellate review. 6551 Collins Ave. Corp. v. Millen, 104 So.2d 337 (Fla. 1958); Honda Motor Co. v. Marcus, 440 So.2d 373 (Fla. 3d DCA 1983), review dismissed, 447 So.2d 886 (Fla. 1984).
[2] The Douberlys also alleged that ISK had a duty to adequately test Bravo 720 before its sale. In their closing argument and in the jury instructions, the Douberlys appear to have abandoned this claim, and instead limited their negligence claim to a failure to warn.