998 So.2d 625 (2008)
SOUTHSTAR EQUITY, LLC, and Brookside Properties, Inc., Appellants,
v.
LAI CHAU, Appellee.
No. 2D05-1306.
District Court of Appeal of Florida, Second District.
February 6, 2008.
Rehearing Denied May 15, 2008.
*627 Mark Hicks and Gary A. Magnarini of Hicks & Kneale, P.A., and Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, Miami, for Appellants.
Barry A. Cohen, Christopher P. Jayson, and Camille Godwin of Cohen, Jayson & Foster, P.A., Tampa, for Appellee.
CANADY, Judge.
Southstar Equity, LLC, and Brookside Properties, Inc., the defendants in a premises liability case, appeal the final judgment in favor of the plaintiff, Lai Chau, who was a tenant at the Remington, a Tampa apartment complex owned by Southstar and operated by Brookside. The judgment was based on a jury award of compensatory damages against the defendants for $5,677,000, and punitive damages awards against Southstar for $3,000,000 and Brookside for $7,000,000.

I. Background

Chau's claim arose from a crime committed against her one night around midnight when she was returning to her apartment at the Remington. As Chau parked her car in the parking lot of the Remington, the car was carjacked and she was abducted by three young men. The abductors took Chau in her car to another location where they shot her in the head three times. Remarkably, Chau survived.
The jury found in favor of Chau on three different theoriesnegligence, negligent misrepresentation, and intentional misrepresentation. Chau's negligence theory was primarily predicated on the alleged failure of the defendants to provide adequate security to protect against reasonably foreseeable criminal acts at the Remington. Central to Chau's misrepresentation theories was the contention that the defendants pursued a corporate policy of misleading tenants and prospective tenants by concealing the high level of criminal activity occurring at the Remington.
At trial, testimony was presented to establish that when Chau visited the Remington to inquire about renting an apartment, she was told by a leasing representative that the Remington had not experienced any problems with crime for the past couple of years. There was testimony that Chau was told that a guard would be patrolling the Remington at night. Other testimony was presented to establish that contrary to the representation made to Chau, numerous crimesincluding violent crimeshad been committed at the Remington. Several former employees at the Remington testified to the management's lack of response to concerns about security on the premises. Testimony of one former employee at the Remington was also presented to establish that leasing agents were instructed by management to tell prospective tenants that "there's no crime that we know of here."

II. Issues

In this opinion, we address three issues raised by the defendants. First, we discuss the defendants' argument that the trial court erred by excluding the testimony of a witness who was not listed by the defense on its witness list. Second, we consider the argument that the trial court erred in excluding from evidence certain *628 provisions of the lease agreement entered by Chau which stated that Southstar did not undertake to provide "security services." Third, we turn to the defendants' contention that the evidence was insufficient to impose liability on the defendants for punitive damages. The defendants have presented a variety of additional arguments for reversal, which we reject without further comment.

III. Analysis

A. The Unlisted Witness

The trial court entered a pretrial order requiring the parties to "[e]xchange trial witness lists, listing each witness the parties expect[ed] to actually call to testify at trial." The witness lists were to be exchanged by the parties "[o]n or before the close of business on the last business day before commencement of trial" and "filed with the Court at commencement of trial." The pretrial order further provided as follows: "Any witness ... not listed in accordance with the pretrial order will not be allowed to testify ... absent extraordinary or compelling reasons outside the control of the attorneys for noncompliance with the pretrial order."
On the morning of the eighth day of the trial, defense counsel announced to the court that a previously unknown and unlisted witness had been identified by the defense the previous evening when the witness contacted defense counsel. The witness had informed defense counsel that she was the leasing agent who met with Chau when she visited the Remington to inquire about a rental. Defense counsel explained to the court that he had "advised [plaintiff's] counsel this morning that we had found this lady and wanted to add her to our witness list and could make her available for deposition tomorrow." Since the plaintiff objected to allowing the unlisted witness to testify, defense counsel stated, "I take it up with the Court and that's where I am." Plaintiff's counsel stated the plaintiff's opposition to the defense request "at this late date" when plaintiff's counsel "was almost at the end of our case" and pointed out that the witness "was never disclosed to us."
The defendants contend on appealas they did in the trial courtthat the trial court's exclusion of the testimony of the witness "was erroneous and an abuse of discretion requiring a new trial." Based on a proffer of testimony that was submitted to the trial court, the defense argues that the witness would have contradicted a key element of the plaintiff's casenamely, the plaintiff's contention that a leasing agent told her there was no crime problem at the Remington. The defense further argues that the witness "could have easily been deposed ... without disturbing the trial schedule," that "no prejudice to Plaintiff was ever conclusively established," and that "the extreme sanction of excluding" the witness "was unwarranted."
For the reasons we explain, we reject the defendants' argument on this issue.
"[U]ltimate control over witness disclosure problems" is a matter that is left "to the broad discretion of the trial judge." Binger v. King Pest Control, 401 So.2d 1310, 1312 (Fla.1981). "[A] trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order." Id. at 1313. The responsibility for "the interpretation and enforcement of any pretrial order mandating witness disclosure" is "vest[ed]" in the trial court. Id.
In determining whether an unlisted witness should be permitted to testify, the central factor to be considered by the trial court is "whether use of the undisclosed witness will prejudice the objecting party." Id. at 1314. "[S]urprise in *629 fact" to "the objecting party" demonstrates such prejudice. Id. The trial court may consider any other relevant factor, including the following:
(i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases).
Id. A trial court should permit the "use of the undisclosed witness" only if it concludes that doing so "will not substantially endanger the fairness of the proceeding." Id.
Here, in seeking leave to present the testimony of the undisclosed witness, the defendants presented the trial court with nothing more than a statement that the witness had been discovered the previous evening and that the plaintiff had been offered an opportunity to depose the witness. This was not sufficient to justify the untimely disclosure of the witness. The pretrial order put the defendants on notice that testimony by an unlisted witness would be precluded "absent extraordinary or compelling reasons outside the control of the attorneys for noncompliance with the pretrial order." The defendants have not arguedeither in the trial court or on appealthat the provisions of the pretrial order were invalid. Despite the unequivocal requirements of the pretrial order, the defendants have never offeredeither in the trial court or on appealany justification for the failure to timely identify and list the witness.
The surrounding circumstances strongly militate against any suggestion that there was a sufficient justification for the failure to list the witness. The proffered testimony of the unlisted witness indicates that although she had left the employ of Brookside some time after the plaintiff had met with her to discuss a rental at the Remington, she had returned as an employee of Brookside and was so employed for the six-month period leading up to the trial. It is manifest that, based on its own records, Brookside should have been able to identify the leasing agents who were working when the plaintiff visited the Remington to inquire about renting an apartment. It is also manifest that Brookside should also have been able to locate a person who was in its employ during the six-month period prior to the commencement of the trial.
In sum, this is the situation presented to the trial court: On the eighth day of trial as the plaintiff's case was drawing to a close, the defense came forward with an unlisted witnessan employee of one of the defendantsproffering testimony that contradicted a key element of the plaintiff's case and offering no reason for the failure to list this employee-witness on its witness list as required by the pretrial order.
"[S]urprise in fact" to the plaintiff would clearly result from allowing the witness to testify. Binger, 401 So.2d at 1314. The prejudicial effect on the plaintiffwho had nearly completed the presentation of her casewas palpable. There was no showing that the plaintiff had either the "ability to cure the prejudice" or "independent knowledge of the [identity] of the witness." Id. The only conceivable means of avoiding gross prejudice to the plaintiff would have been to declare a mistriala remedy not sought by the defendants. And mistrying the case would have been a "disruption of the orderly and efficient trial of the case." Id.
The fact that the newly discovered witness was announced on the eighth day *630 of the trial is, of course, an important consideration in the evaluation of the prejudice to the plaintiff.
Clearly, except under extraordinary circumstances..., the lawyers have a right to expect that once a trial commences, discovery ... must cease. The lawyers who make the opening statement must have a reasonably firm idea of what the evidence will show. Liberal rules of discovery assure this. Once the trial starts the lawyers are engaged in the unfolding of the evidence they have already collected. That is why there are discovery cutoffs. All the discovery rules and the extensive efforts of parties to discover the other party's case would be for naught if one side were able to wait until after the trial started to establish key pieces of evidence....
Grau v. Branham, 626 So.2d 1059, 1061 (Fla. 4th DCA 1993).
Based on the circumstances with which it was confronted, the trial court did not abuse its discretion in excluding the testimony of the unlisted witness. Indeed, in light of the limited information that the defendants provided to the trial court, a decision permitting the witness to testify may well have been an abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). There was simply no basis for the trial court to conclude that "use of the undisclosed witness" would "not substantially endanger the fairness of the proceeding." Binger, 401 So.2d at 1314.

B. The Excluded Lease Provision

On this issue, the defendants first argue that the trial court erred in excluding from evidence certain provisions of the lease agreement entered by the plaintiff which the defendants contend limited their "landlord's duty of care." Second, the defendants assert that even if the provisions were inadmissible insofar as they were legally invalid as a limitation of liability, at least a redacted version of the provisions should have been admitted to show that the defendants had not promised to provide "security services" for tenants at the Remington.
The first argument was not presented to the trial court and is therefore unpreserved. Counsel never argued that the lease provisions were admissible to establish a limitation on the landlord's duty of care. In fact, at the hearing on the plaintiff's motion in limine which sought exclusion of the lease provisions, counsel for the defendants disavowed any intention of relying on the provisions to limit the duty of the defendants. Defense counsel said: "We're not trying to raise the waiver argument. I mean we understand the law; that you certainly cannot waive the right to provide security." Counsel's disavowal of "the waiver argument" can only be understood as referring to the argument that the lease provisions limited the landlord's duty of care.
The second argument relates specifically to the following redacted language in the lease which was proffered by the defense: "We do not provide ... security services for your [i.e., the tenant's] protection or the protection of your property.... If, from time to time, we provide any security services, those services are only for the protection of our property...." In their response in opposition to the plaintiff's motion in limine, the defendants argued that these provisions of the lease "constitute[d] a disclosure by which the lessor specifically sets forth that it has no duty to hire security personnel to patrol the property." The defendants contended that this disclosure was relevant, probative evidence, that is, "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2006). At the hearing on the motion, the defendants focused on the relevance of the redacted *631 lease provisions to the misrepresentation theories of liability. The defendants argued that rebutting the plaintiff's claims about the defendants' misrepresentations concerning the provision of security at the Remington was "the only purpose" for which the lease provisions were admissible.
We conclude that the trial court erred in excluding the lease provisions relating to "security services," but that this erroneous exclusion of evidence was not harmful.
To show that the erroneous exclusion of the lease provisions requires reversal of the judgment, the defendants must establish that "it is reasonably probable that a result more favorable to the appellant[s] would have been reached if the error had not been committed." Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2d DCA 1979); see also § 59.041, Fla. Stat. (2006) (providing that judgments should not be reversed except where "the error complained of has resulted in a miscarriage of justice"); § 90.104(1), Fla. Stat (2006) (providing that erroneous evidentiary rulings are a basis for reversal only "when a substantial right of the party [appealing] is adversely affected").
The lease provisions were relevant to the case presented by the defense to rebut one ground for the misrepresentation theories of liability, and their exclusion was unwarranted. It is not, however, "reasonably probable that a result more favorable" to the defendants "would have been reached" by the jury if the proffered redacted version of the lease provisions had not been excluded. Damico, 379 So.2d at 965.
The lease provisionswhich disclosed that the defendants did not undertake to provide security services for the benefit of tenantswere relevant to show that the plaintiff did not reasonably rely on the assurances which she claimed were made to her that a guard would be patrolling the premises of the Remington at night. The most compelling ground for the plaintiff's misrepresentation theories, however, was the separate and distinct alleged misrepresentation concerning the lack of crime at the Remington. The excluded lease provisions concerning "security services" had no bearing on that ground for the misrepresentation theories of liability. Given that the excluded lease provisions were totally irrelevant to the most significant and compelling ground for the plaintiff's misrepresentation claims, it is not reasonably probable that the jury's verdicts on the misrepresentation claims would have been altered by the admission of the excluded lease provisions.
Even if the erroneous exclusion of the redacted lease provisions had been harmful with respect to the misrepresentation theories, that would not have been a sufficient basis for setting aside the jury's verdict on compensatory damages. The defendants have not properly preserved an argument that the excluded lease provisions were relevant to the negligence theory of liability. The absence of harmful error with respect to the negligence theory dictates that the compensatory damages award be upheld.
Where a special verdict supports the same damage claim on two or more theories of liability, if one of the theories of liability is not affected by harmful error, an error with respect to another theory of liability that would be considered harmful if the affected theory of liability were viewed in isolation is rendered harmless because the verdict is independently supported by another theory of liability. See ISK Biotech Corp. v. Douberly, 640 So.2d 85, 89 (Fla. 1st DCA 1994); Thomas v. Wyatt, 405 So.2d 1369, 1370 (Fla. 4th DCA 1981).
*632 For reasons similar to the reasons that the erroneous exclusion of the redacted version of the lease provisions was not harmful with respect to the misrepresentation theories of liability, we conclude that it is not reasonably probable that the jury's decision regarding punitive damages would have been different if the error had not occurred. The most compelling basis for the imposition of punitive damages which we will further discuss belowwas the claim that the plaintiff was intentionally misled concerning the level of criminal activity at the Remington. As we have discussed, the excluded lease provisions were wholly irrelevant to that claim.

C. The Punitive Damage Awards

Finally, the defendants argue that there was insufficient evidence to support the jury's determination that the plaintiff was entitled to punitive damages. The defendants contend that because their "conduct did not rise to the level of criminal manslaughter necessary to sustain a punitive damage award," the trial court "erred in failing to grant a directed verdict on Chau's punitive damage claims." According to the defendants, "[t]here is an extensive body of premises-liability and landlord/tenant case law involving criminal acts of third parties disallowing punitive damages under" facts "substantially similar" to the facts of the instant case.
Without reaching the question of whether the evidence established gross negligence as a basis for the imposition of punitive damages, we sustain the imposition of punitive damages on the ground that the defendants have presented no specific argument showing why the evidence supporting the intentional misrepresentation theory of liability was an insufficient basis for punitive damages.
Section 768.72(2), Florida Statutes (2001), provides for the award of punitive damages for "intentional misconduct or gross negligence." A finding of such "intentional misconduct or gross negligence" must be "based on clear and convincing evidence ... that the defendant was personally guilty of [the] intentional misconduct or gross negligence." Id.[1] To establish an entitlement to punitive damages based on "intentional misconduct," it is necessary to show "that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72(2)(a). For an award of punitive damages based on "gross negligence," it must be shown "that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b).
Here, the jury's determination of liability for punitive damages did not specify whether it was predicated on gross negligence or intentional misconduct, or both. Based on the theories of liability accepted by the jurynegligence, negligent misrepresentation, and intentional misrepresentationthe punitive damage awards are potentially sustainable based on either gross negligence or intentional misconduct or both. To sustain the jury's verdict we need only conclude that there was sufficient evidence as a matter of law to establish the existence of either "gross negligence" *633 or "intentional misconduct" as those terms are defined in section 768.72(2). In the de novo evaluation of the legal sufficiency of the evidence to support punitive damages, an appellate court must "examin[e] the evidence in [the] light most favorable to the plaintiff[] and indulg[e] every reasonable inference therefrom in the plaintiff's favor." Am. Cyanamid Co. v. Roy, 498 So.2d 859, 861 (Fla.1986).
The jury's determination that punitive damages were warranted is most readily sustained on the basis of the jury's finding that the defendants were guilty of intentional misrepresentationa finding supported by the evidence that the defendants affirmatively misled the plaintiff concerning the level of criminal activity at the Remington. With respect to this basis for the punitive damage awards, the defendants assert without elaboration that "the evidence submitted by Chau in support of her intentional misrepresentation claim simply does not rise to the level needed under § 768.72." In making their argument, the defendants do not articulate any specific reason that any of the elements required for a finding of "intentional misconduct" are lacking in the evidence presented by the plaintiff in this case. Such a conclusory argument is unavailing.[2]
None of the premises liability cases on which the defendants rely, see Bradenton Mall Assocs. v. Hill, 508 So.2d 538 (Fla. 2d DCA 1987); Ten Assocs. v. Brunson, 492 So.2d 1149 (Fla. 3d DCA 1986); Lambert v. Doe, 453 So.2d 844 (Fla. 1st DCA 1984); Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981), involve a fact-pattern similar to the facts on which the plaintiff's intentional misrepresentation claim was based. These cases thus provide no support for the defendants' conclusory argument that the evidence for the intentional misrepresentation claim provided an insufficient basis for imposing liability for punitive damages.
The defendants also present a conclusory argument that the punitive damage awards should be reversed because "there was no proximate causation/foreseeability as a matter of law and imposing liability would essentially make the landlord strictly liable." In support of this assertion, the defendants offer no explanation and cite no authority. This barren argument is rejected.
*634 In short, the defendants have not presented any basis for reversing the punitive damage awards.

IV. Conclusion

The judgment against the defendants is affirmed.
Affirmed.
SILBERMAN, J., Concurs.
SCHOONOVER, JACK R., Senior Judge, Dissents.
NOTES
[1] Section 768.72(3) sets forth the circumstance in which "punitive damages may be imposed [on an employer, principal, or corporation] for the conduct of an employee or agent." Here, the defendants present no argument that the requirements of section 768.72(3) were unsatisfied.
[2] Historically, the law was that "proof of fraud sufficient to support compensatory damages necessarily [was] sufficient to create a jury question regarding punitive damages." First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536, 539 (Fla. 1987); see also Azar v. Richardson Greenshields Secs. Inc., 528 So.2d 1266, 1269-70 (Fla. 2d DCA 1988). It is questionable, however, whether under the definition of "intentional misconduct" in section 768.72(2) every actionable instance of fraud or intentional misrepresentation will constitute a basis for the award of punitive damages.

The harm suffered by the victim of an intentional misrepresentation ordinarily (a) is the necessary consequence of the victim's reliance on the misrepresentation and (b) is commensurate with some benefit obtained by the person making the misrepresentation. An intentional misrepresentation thus typically is intended to cause the specific harm suffered by the victim. But in some circumstances such as those present in the instant casean intentional misrepresentation simply exposes the victim who relies on it to a risk of harm and the misrepresentation is not intended to cause the specific harm ultimately suffered by the victim. Under the definition of "intentional misconduct" in section 768.72(2)(a), a salient question with respect to such an instance of intentional misrepresentation is whether the party responsible for the misrepresentation had "actual knowledge" of the "high probability that injury or damage to the claimant would result." Since the defendants have not raised this question here, we do not consider it.